EMMA A. HALEY *vs.* JOHN H. WHALEN.

Middlesex. Jan. 13, 1876. — Jan. 3, 1877. COLT & ENDICOTT JJ., absent.

A woman, who has made a complaint under the bastardy act, ⌐en. Sts. c. 72, in which none of the persons mentioned in § 2 have intervened, may settle the complaint without the consent of such persons.

In an action against the sureties on a bond, given under the bastardy act, it is a good defence, that the parties to the complaint, in which the bond was given, had settled it; that the sureties were informed that the complaint was settled, and that there would be no further.proceedings thereon, so that they took no measures to protect themselves; that subsequently, the complaint was secretly and fraudulently entered in court without their knowledge; and that this was done in pursuance of a fraudulent conspiracy and agreement between the plaintiff and their principal, a part of which conspiracy was to assure them that they were discharged from liability upon the bond, and to keep them in ignorance of the unlawful act of the plaintiff in continuing to prosecute an action in which she had already acknowledged satisfaction.

CONTRACT against John H. Whalen as principal, and Timothy Phelan and Francis Quinn as sureties, upon a bond, dated April 1, 1874, payable to the plaintiff, and conditioned that the defendant Whalen should appear at the next June term of the Superior Court, at Cambridge, and answer to a complaint made by the plaintiff on her examination on oath before the police court of Cambridge, charging him with being the father of a bastard child, of which she was pregnant, and that he should abide the order of the Superior Court thereon.

The declaration alleged the execution of the bond; that it was returned to the Police Court in Cambridge, and filed therein, and that proceedings were afterwards taken in the Superior Court, in the case named in said bond; that the following order was passed, which order Whalen had failed to abide: "And now, after default upon the supplemental complaint, the said John H. Whalen is by the court adjudged to be the father of said child, and it is hereby ordered by the court that the said Whalen pay to said complainant forthwith the sum of two hundred dollars for the maintenance of said child from the time of the birth of said child to the death of the child; that the said Whalen shall give bond with sufficient sureties in the sum of four hundred dollars for the performance of this order, and that said Whalen shall be committed until he gives such bond. It is further ordered that said complainant recover of said Whalen the costs of this suit."

The answer of the sureties contained a general denial; and set up that the plaintiff on or about April 23, 1874, acknowledged satisfaction in the action in which said bond was given, and prayed that all further proceedings therein should be stayed, by the following instrument: "State of Massachusetts, County of Middlesex. Emma A. Haley v. John H. Whalen. Bastardy Case. The above named Emma A. Haley hereby acknowledges full satisfaction in the above entitled cause, wherein the said Emma A. Haley is complainant, and the said John H. Whalen is defendant, and asks that all further proceedings be perpetually stayed herein. Emma A. Haley."

"Cambridgeport, April 23, 1874. Consent to the within agreement is given by us overseers of the poor of the city of Cambridge." [Then followed the signatures of four of the overseers.]

That said instrument was duly returned to the Police Court in Cambridge, and filed with the other papers in the action; that after the filing of said instrument they were informed by the clerk and judge of the Police Court that no further proceedings would be taken in said action, and that they, the defendants, were discharged from all liability on the bond given in the action; that relying on the instrument executed by the plaintiff, and the representations of the officers of the Police Court, they

were induced to take no means to protect themselves and obtain security for their liability on said bond; that the action in which the bond was given was made returnable to the Superior Court, to be holden at Cambridge, on the first Monday of June, 1874; that the plaintiff did not enter the action on that day, but made a late entry and was ordered by the court to make due notification, which notification the plaintiff failed to make; that, after giving the above instrument and informing the defendants that there should be no further proceedings in the action, the plaintiff fraudulently and without due notice removed the action to the Superior Court, and fraudulently and without due notice obtained the order of court declared on in the plaintiff's declaration; that the plaintiff well knowing John H. Whalen, the defendant in the action, and the principal in the bond, to be a worthless and irresponsible party, and well knowing that any judgment or order of court obtained against him would be of no value, and well knowing the defendants Quinn and Phelan to be responsible parties, and seeking how Whalen might escape liability and contriving how Whalen might be got out of the state, and the defendants, Quinn and Phelan, charged on the bond, did conspire together with Whalen to inform the defendants that no further proceedings would be taken in the matter, and that they, the defendants, were discharged from all liability on the bond; that the plaintiff did fraudulently conspire together with Whalen to keep the defendants in ignorance of the removal of the said action to the Superior Court, until Whalen should be got out of the state, and the plaintiff should fraudulently charge the defendants on the bond.

Trial in the Superior Court, before *Pitman,* J., who reported the case for the determination of this court, in substance as follows:

The principal defendant was defaulted, and trial was had against the sureties only. The execution of the bond and the proceedings thereon of record and the default, as recited in the plaintiff's declaration, were proved or admitted. The defendants then offered in evidence the release referred to and made a part of their answer, the execution of which by the plaintiff was admitted. It was agreed that the signatures of the several overseers of the poor that appear thereon were genuine, and that

they were four out of the whole number of six constituting the board of overseers of the poor in the city of Cambridge; but that the action of the overseers was separate and individual, and not had at any meeting of the board. It was also agreed that the defendant Whalen in the original suit received notice of the late entry of the plaintiff's complaint in the Superior Court, as ordered, and that the sureties on the bond did not receive notice of the late entry, and never knew that the action was entered in the Superior Court until after judgment thereon. It was also agreed that the child died before the filing of the supplemental complaint in the original action.

The defendants further offered to prove the other facts set forth by way of defence in their answer. But the judge, being of opinion that all the evidence offered by the defendants was insufficient in law to bar the maintenance of the action and showed no legal defence thereto, if proved, directed a verdict for the plaintiff for the penal sum of the bond. If the evidence offered was material and competent, the verdict was to be set aside and a new trial ordered; otherwise judgment on the verdict.

*J. W. Hammond*, for the plaintiff, was first called upon.

*J. F. Brown & M. H. Swett*, for the defendants, were not called upon.

Lord, J. The Gen. Sts. *c.* 72, § 9, provide that "no complaint shall be withdrawn, dismissed, or settled, by agreement of the mother and the putative father, without the consent of the overseers of the poor of the city or town in which she has her settlement or residence, or of one of the other officers named in section two, or of her parent or guardian, unless provision is made to the satisfaction of the court, to relieve and indemnify any parent, guardian, city, town, or the state, from all charges that have accrued or may accrue for the maintenance of the child, and for the costs of complaint and prosecution thereof."

It will be seen that this is only a qualified prohibition of the settlement without the consent of any of the parties named, and that such was in contemplation of the Legislature is apparent from the provisions of the next section, which are, "No settlement made by the mother and father, before or after complaint is made, shall relieve the father from liability to any city or town, or the state, for the support of a bastard child."

Section 2 of the same chapter provides that "if a woman en-titled to make a complaint refuses or neglects so to do when re-quested by an overseer of the poor of the place where she resides or has a settlement, or one of the alien commissioners, the super-intendent of a state almshouse or of the hospital at Rainsford Island, or a person authorized by either of them to make the request, or either of her parents, or her guardian, the person so requesting may make the complaint; and when already made, if she refuses or neglects to prosecute the same, either of said per-sons may prosecute the case to final judgment for the benefit of the parent, guardian, city, town, or state. In such cases the bond shall be made to the party for whose benefit the complaint is made or prosecuted."

Taking all the provisions of the statute together, we are of opinion that the rights of the respective parties are to be fixed by the record. If the mother elects to prosecute to final judg-ment, she may do so as a party. If she refuses or neglects after request to do so, then either of the persons named in § 2 may make the complaint, and become a party to the record. If, hav-ing already made a complaint, she refuses to proceed, either of said parties may intervene and become a party to the record and prosecute the same as a party. It must be that the party to the record is the party who can control the proceedings. Undoubt-edly it was competent for either of the persons named in § 2 to have intervened, and to have become a party to the complaint, when the complainant made a settlement of her claim against the principal defendant; but no such party did intervene. That the statute contemplates a settlement and discontinuance of the suit by the parties to it, except as above qualified, is quite ap-parent. And it seems that the true construction of § 9 is, that no complaint shall be withdrawn, &c., without the consent of such person named in § 2, as shall have become a party to the proceeding. It would be an extraordinary construction of the statute to say that, if the overseers of the poor of a city or town had originally instituted the complaint because of the mother's refusal, the complaint might be dismissed by the agreement of the mother and the putative father, with the consent of her parent or of her guardian. The true construction would seem to be, that any municipality or individual having an interest in

the proceedings may become a party to the complaint for his or its benefit and protection. When, therefore, the mother is the sole party, the proceedings are for her benefit and the bond is to be given to her. When any other person becomes a party to the record, the bond is to be given to such person for his benefit. See *Noonan* v. *Brogan*, 3 Allen, 481 ; *Jones* v. *Thompson*, 8 Allen, 334; *Wheelwright* v. *Greer*, 10 Allen, 389.

In this case, there could scarcely be an interest in any person but the mother. The original complaint was made during pregnancy ; and, before the usual supplemental complaint was filed, which, in the ordinary course of proceeding, would be at the first term after the birth of the child, the child had been born and had died. There would hardly seem to be reason therefore for either of the public officers, or the parent or the guardian of the mother, to intervene. Without regard to this, however, we think that the mother was the party of record and might settle the complaint, except as against some intervening party who had the right to come in and prosecute. It is not necessary to decide whether, if another party had intervened, upon her settlement, the bond which had previously been given to her would enure to the benefit of the intervening party, or whether he must have obtained an order for a new bond under the provisions of § 2. It is by no means clear, that, under such circumstances, even if the existing bond would enure to the benefit of the new party, an action could be maintained upon it in the name of the present plaintiff, without a recital of the statute facts which kept the proceedings alive, notwithstanding the attempted settlement of the complaint by the complainant. The bond in suit then is to be considered the contract of the principal defendant with the plaintiff, and the contract of suretyship by the present defendants with the plaintiff.

In this view, it becomes necessary to consider what is the defence to the bond, and whether it is sufficient in law. The condition of the bond recites that the plaintiff had made complaint against the principal of the bond, and that the proper magistrate had ordered him to give bond with sufficient sureties to appear and answer to said complaint and abide the order of the court thereon. The defendants' answer is, that they were sureties only on the bond ; that the parties to the complaint in which

said bond was given settled and adjusted the complaint, so that there no longer existed any cause of action, and no order of the court could legally be made thereon. They say farther, that the plaintiff, having informed the sureties that the action was settled and that there would be no further proceedings therein, did not enter the complaint at the time required by law, at which time it was their duty to see that the process was discontinued, but subsequently and secretly and fraudulently, without their knowledge, entered said complaint; and that this was done in pursuance of a fraudulent conspiracy and agreement between herself and the principal upon the bond, a part of which fraudulent conspiracy and agreement was to assure the sureties that they were discharged from liability upon said bond, and to keep them in ignorance of her own unlawful act in continuing to prosecute a suit in which she had already acknowledged satisfaction. If this defence can be established, it is a full answer to the plaintiff's claim. *Verdict set aside and new trial ordered.*